588 A.2d 572

**John WILLS and John L. Wills, Petitioners,**

v.

**STATE BOARD OF VEHICLE MANUFACTURERS, DEALERS AND SALESPERSONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 6, 1990.

Decided Feb. 6, 1991.

Publication Ordered March 27, 1991.

J. Matthew Wolfe, Philadelphia, for petitioners.

Peter K. Bauer, Joyce McKeever, Chief Counsel, and Pamela J. Raison, Chief Counsel, Dept. of State, Harrisburg, for respondent.

Before COLINS and KELLEY, JJ., and BARBIERI, Senior Judge.

COLINS, Judge.

John Wills (salesperson) and John L. Wills (dealership) (collectively, petitioners) petition for review of the February 16, 1990 Adjudication and Order of the State Board of Vehicle Manufacturers, Dealers and Salespersons, revoking the licenses of both salesperson and dealership and also imposing civil penalties for violation of Section 10(4) of the Board of Vehicles Act (Act)[1]

On December 9, 1988, the Board issued an Order to Show Cause which was served on both salesperson and dealership

---

1. Act of December 22, 1983, P.L. 306, *as amended,* 63 P.S. § 818.10(4). Section 10(4) states,

and which alleged that both salesperson and dealership had violated Section 10(4) of the Act. The Order to Show Cause alleged that, on or about October 22, 1986, salesperson had pleaded guilty to two counts of the interstate transportation of forged or altered securities in violation of 18 U.S.C. § 2314 and had pleaded guilty to six counts of odometer tampering in violation of 15 U.S.C. §§ 1984 and 1990c. The Order to Show Cause further alleged that salesperson had violated Section 10(4) of the Act because of his guilty pleas and that dealership violated Section 10(4) of the Act because salesperson, who pleaded guilty to crimes of moral turpitude, owned dealership. Finally, the Order to Show Cause indicated that if the factual allegations set forth therein were found to be true and correct by the Board, salesperson could lose his license and could be assessed a civil penalty. The Order to Show Cause did not indicate that dealership could lose its license or be assessed a civil penalty. On April 3, 1989, petitioners filed an Answer to the Board's Order to Show Cause, wherein petitioners admitted all of the factual allegations contained within that Order to Show Cause.

The Board held a formal hearing on August 17, 1989. Although petitioners attended the hearing with counsel, they presented no testimony and entered no documents into evidence. The Board issued its Adjudication and Order on February 16, 1990, revoking the licenses of both salesperson and dealership and also imposing civil penalties.

Petitioners timely filed a Petition for Review and an Application for Supersedeas. The Application for Superse-

The Board shall have the power to formally ... revoke any license ... if after due notice of and hearing, the person charged ... is found guilty of committing ... any of the following acts:

      .      .      .

(4) Being a vehicle dealer, broker or salesperson, having within three years prior to the application for or issuance of a license or while his current license is in force pleaded guilty ... in a court of competent jurisdiction in this or any other state or Federal jurisdiction of forgery, embezzlement, obtaining money under false pretenses, extortion, conspiracy to defraud, bribery, odometer tampering or any other crime involving moral turpitude.

deas was denied, after argument, by this Court's order of April 12, 1990.

Petitioners raise two issues for our review. First, dealership asks whether it was denied due process because its license was revoked but the Board's Order to Show Cause "failed to notify [it] that penalties would be sought or lodged against [the] dealer's license." Second, petitioners ask whether their licenses were properly revoked, because the Board did not order revocation until more than three years had elapsed from the day salesperson pleaded guilty.

Pursuant to Section 704 of the Administrative Agency Law, our scope of review is limited to determining whether constitutional rights were violated, Board procedure was followed, the decision is in accordance with law, or the findings of fact are supported by substantial evidence.[2]

■ Petitioners argue that dealership was denied due process of law because the penalty section of the Board's Order to Show Cause did not indicate that dealership could lose its license and be assessed civil penalties. Petitioners, however, misconstrue the meaning of due process. "It is well settled that the essential elements of due process in an administrative proceeding are notice and an opportunity to be heard." *Groch v. Unemployment Compensation Board of Review*, 81 Pa.Commonwealth Ct. 26, 29, 472 A.2d 286, 287–88 (1984). "Notice, the most basic requirement of due process, must 'be reasonably calculated to inform interested parties of the pending action, and the information necessary to provide an opportunity to present objections....' *Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 452–453, 370 A.2d 685, 692–693 (1977)." *Noetzel v. Glasgow, Inc.*, 338 Pa.Superior Ct. 458, 469, 487 A.2d 1372, 1377 (1985), *cert. denied*, 475 U.S. 1109, 106 S.Ct. 1517, 89 L.Ed.2d 915 (1986). Our review of the record reveals that dealership's due process rights were not violated because dealership had notice of the charges and was provided with an opportunity to defend

2. 2 Pa.C.S. § 704.

itself at the formal hearing. The Board's Order to Show Cause clearly sets forth the charges that both salesperson and dealership violated Section 10(4) of the Act because salesperson pleaded guilty to crimes of moral turpitude and salesperson owned dealership. Due process of law did not require the Board to inform petitioners of all of the penalties to which they could be subjected. The fact that the penalty section of the Order to Show Cause did not indicate that dealership could lose its license did not violate dealership's right to due process of law.

Petitioners cite several cases to support their argument that dealership was denied due process because it was not specifically informed that it could lose its license. A review of those cases, however, indicates that none of them support petitioners' proposition. In particular, petitioners cite to *Camaione v. Borough of Latrobe*,[3] arguing that the facts in *Camaione* are similar to their own because both petitioners and the police officer were presented with partial notice. Petitioners' reliance on *Camaione* is doubly misguided. First, petitioners rely on this Court's *Camaione* decision, which was reversed by the Pennsylvania Supreme Court. Second, *Camaione* is neither factually nor legally similar and provides no support for petitioners' due process argument.

■ Petitioners also argue that the Board had no authority to revoke their licenses because more than three years elapsed between the license revocations and salesperson's guilty pleas.[4] Petitioners allege that Section 10(4) functions like a statute of limitations and that the Board lost its opportunity to revoke petitioners' licenses because it did not act within the three year period mentioned in that section. Petitioners misread the plain language of Section 10(4). That section provides that the Board may revoke a license if

3. 113 Pa.Commonwealth Ct. 113, 536 A.2d 500 (1988), *rev'd,* 523 Pa. 363, 567 A.2d 638 (1989), *cert. denied,* ——— U.S. ———, 111 S.Ct. 298, 112 L.Ed.2d 251 (1990).

4. Slightly more than two years elapsed between the issuance of the Order to Show Cause (December 9, 1988) and salesperson's guilty pleas (October 22, 1986).

a licensee pleads guilty to odometer tampering or a crime of moral turpitude within three years prior to applying for a license, or within three years prior to the issuance of a license, or while holding a current license.[5] Petitioners admit that they were licensed by the Board at the time that salesperson pleaded guilty to odometer tampering and other crimes involving moral turpitude. Having been licensed when he pleaded guilty, salesperson falls within the plain language of Section 10(4). Dealership, being solely owned by salesperson, also falls within Section 10(4).

If petitioners believed that the Board unduly delayed initiating disciplinary action against them, they could have raised the affirmative defense of laches at the formal hearing.[6] To prove laches, petitioners would have had to prove that the Board's delay was unjustified and that petitioners' rights were prejudiced as a result. "The application of the equitable doctrine of laches does not depend upon the fact that a definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice. *Wilson v. King of Prussia Ent., Inc.*, 422 Pa. 128, 133, 221 A.2d 123, 126." *Weinberg v. Commonwealth, State Board of Examiners of Public Accountants*, 509 Pa. 143, 148, 501 A.2d 239, 242 (1985).

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 6th day of February, 1991, the order of the State Board of Vehicle Manufacturers, Dealers and Salespersons in the above-captioned matter is affirmed.

5. The Board's regulations state this more clearly. 49 Pa.Code § 19.-22(3) provides that the Board can revoke a license if the licensee pleaded guilty to a crime of moral turpitude "within 3 years prior to the issuance of the license then in force or while his current license is in force...."

6. At the formal hearing, petitioners presented no testimony and entered no documents into evidence. Petitioners' counsel made the due process argument that is presently before this Court, but he did not raise the defense of laches.